IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

|  |  |  |
|---|---|---|
| TIFFANY PURVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil No. 9:17-cv-01532-DCN |
| vs. | ) | |
| | ) | **ORDER** |
| MARVIN BRYANT, *individually and as an employee/agent of Royal Tanklines*, and 807999 ONTARIO LTD, *d/b/a Royal Tanklines*, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

The following matter is before the court on plaintiff Tiffany Purvis's ("Purvis") motion to exclude defendants' expert, ECF No. 26; defendants Marvin Bryant ("Bryant") and 807999 Ontario Ltd's, doing business as Royal Tanklines ("Royal Tanklines"), (collectively, "defendants") motion to compel Purvis's medical authorizations, ECF No. 27; and defendants' motion to compel or exclude Purvis's expert, ECF No. 29. For the reasons set forth below, the court denies Purvis's motion to exclude defendants' expert, denies defendants' motion to compel or exclude Purvis's expert, and finds moot defendant's motion to compel medical authorizations.

## I. BACKGROUND

This case arises out of a car accident. On April 11, 2015, Purvis was driving northbound in the second to right-hand lane of Interstate 95. Bryant was driving a tractor trailer alongside Purvis in the right-hand lane of Interstate 95. Bryant is employed by Royal Tanklines. Purvis alleges that Bryant drove into Purvis's lane of traffic, striking

1

Purvis's car and causing her car to careen into a ditch. Purvis was injured and trapped in her car for a period of time before emergency personnel could rescue her.

Purvis filed suit on April 4, 2017 in the Court of Common Pleas for Jasper County, South Carolina, alleging that Bryant was negligent in operating the tractor trailer and that Royal Tanklines failed to properly train Byrant and negligently entrusted the tractor trailer with him. Defendants removed the case to federal court based on diversity jurisdiction on June 12, 2017. On September 11, 2018, Purvis filed a motion to exclude defendants' expert witness, ECF No. 26, to which defendants responded, ECF No. 28. Then defendants filed a motion to compel Purvis's medical authorizations on September 21, 2018, ECF No. 27. Purvis provided the authorizations on September 28, 2018, making the motion moot. Defendants also filed a motion to compel the deposition of Purvis's expert or to exclude Purvis's expert on October 2, 2018, ECF No. 29, to which Purvis responded, ECF No. 33, and defendants replied, ECF No. 34. The motions to exclude the experts are ripe for review.

## II. DISCUSSION

### A. Motion to Exclude Defendants' Expert

Purvis seeks to exclude the opinion of defendants' expert, G. Wayne Maltry ("Maltry"). Maltry works in accident reconstruction and concluded that Purvis caused the collision between Purvis and Bryant. Purvis argues that Maltry did not review all of the relevant evidence before coming to his opinion, and as such his opinion was based on insufficient facts and formed through unreliable principles and methods. Specifically, Purvis argues Maltry's opinion should be excluded because (1) Maltry did not consider Purvis's deposition testimony or Bryant's driver repair, pre-inspection or post-inspection

reports when forming his causation opinion; (2) Maltry did not consider Bryant's reports when forming his standard of care opinion; and (3) defendants' counsel did not provide Maltry with the deposition testimony or reports, making Maltry a "mouthpiece of a filtered version of events." ECF No. 26 at 10.  In response, defendants explain that in his deposition, Maltry stated that he finds physical evidence to be more reliable than testimony, and based on the physical evidence and his mathematical calculations, the only way he could reconstruct the accident was in the manner he described in his report, with Purvis being the cause.  Defendants also note that Maltry explained why reviewing Bryant's reports would likely not have affected his opinion.

>Federal Rule of Evidence 702 provides:
>
>A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
>(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
>(b) the testimony is based on sufficient facts or data;
>
>(c) the testimony is the product of reliable principles and methods; and
>
>(d) the expert has reliably applied the principles and methods to the facts of the case.

"In assessing the admissibility of expert testimony, a district court assumes a 'gatekeeping role' to ensure that the 'testimony both rests on a reliable foundation and is relevant to the task at hand.'"  In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prod. Liab. Litig. (No II) MDL 2502, 892 F.3d 624, 631 (4th Cir. 2018) (quoting Daubert v. Merrell Dow Pharmas., Inc., 509 U.S. 579, 597 (1993)).  The court has a "special obligation" to ensure that expert testimony is relevant and reliable.  Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999).  However, "'the trial court's role as a

gatekeeper is not intended to serve as a replacement for the adversary system,' and consequently, 'the rejection of expert testimony is the exception rather than the rule.'" United States v. Stanley, 533 F. App'x 325, 327 (4th Cir. 2013) (per curiam) (quoting Fed. R. Evid. 702).

Rule 702 of the Federal Rules of Evidence requires that an expert opinion be "based upon sufficient facts or data." "It follows that an opinion based on an inadequate or inaccurate factual foundation cannot be a reliable opinion, no matter how valid the principles and methods applied or how well-qualified the expert." Fernandez v. Spar Tek Indus., Inc., 2008 WL 2185395, at *6 (D.S.C. May 23, 2008). However, in some cases, whether an expert should have considered certain facts when forming her opinion goes to the weight of the opinion, not its admissibility. Sparks v. Gilley Trucking Co., Inc., 992 F.2d 50, 54 (4th Cir. 1993); see also Bazemore v. Friday, 478 U.S. 385, 400 (1986) ("Normally, failure to include variables will affect the analysis' probativeness, not its admissibility.").

In addition, the failure to consider potential alternative causes may render an expert's testimony inadmissible. See Westberry v. Gislaved Gummi AB, 178 F.3d 257, 265 (4th Cir. 1999) (requiring expert to provide some explanation for discounting a proposed alternative cause). However, an expert need not "rule out every potential cause." In re Fosamax Prod. Liab. Litig., 647 F. Supp. 2d 265, 278 (S.D.N.Y. 2009) (quoting Israel v. Spring Indus., 2006 WL 3196956, at *5 (E.D.N.Y. Nov. 3, 2006)). Daubert simply requires that an expert "address obvious alternative causes and provide a reasonable explanation for dismissing specific alternate factors identified by the defendant." Id. (quoting Israel, 2006 WL 3196956, at *5). If an expert meets this

threshold, then the failure to investigate potential alternative causes simply affects the weight of the evidence. Westberry, 178 F.3d at 265 ("The alternative causes suggested by a defendant 'affect the weight that the jury should give the expert's testimony and not the admissibility of that testimony,' unless the expert can offer 'no explanation for why she has concluded [an alternative cause offered by the opposing party] was not the sole cause.'" (quoting Heller v. Shaw Indus., Inc., 167 F.3d 146, 156–57 (3d Cir. 1999))).

Maltry's opinions are (1) the collision occurred when Purvis's vehicle moved into Bryant's truck's lane of traffic, creating contact between Purvis's passenger side door and the truck's Number 4 axle wheel; (2) Purvis overcorrected her vehicle, causing her to lose control and drive off the road; and (3) because Bryant was alert and reacted promptly, he was able to maintain control of the truck throughout the collision. Maltry arrived at this opinion using pictures of the vehicles' damage and tire marks on the road as well as calculations using the acceleration capabilities of the vehicles and the distance required for the truck to change lanes and come to a full stop. Maltry Depo. 29:5–39:11. Purvis argues that by failing to review her deposition and Bryant's reports, Maltry failed to base his opinion on sufficient facts and consider alternative causes of the accident. The court finds that Maltry's opinion is based on sufficient facts. While Maltry's report did not consider alternative causes, the court finds that Maltry sufficiently explained his reasons for this during his deposition.

1. **Purvis's Deposition Testimony**

In forming his opinions, Maltry did not review Purvis's deposition. He admits that it would be important for him to review Purvis's testimony before rendering an opinion finding that she caused the accident, and he did not review her testimony because

he did not know that Purvis's deposition was taken.  Maltry Depo. 20:11–18.  When asked if it is customary for accident reconstructionists to not review the deposition of party involved in the accident before rendering an opinion, Maltry responded that he "would imagine not."  Maltry Depo. 21:21–25.

However, Maltry also made it clear that he did not need Purvis's testimony to come to his conclusion of how the collision occurred because his opinion was based on his mathematical calculations.  Maltry explained in his deposition that "[i]t is handy" to have the deposition testimony of parties involved in an accident, "but it is not essential if [he has] evidence—physical evidence—that contradicts it—[he is] going to believe the physical evidence before [he does] the testimony."  Maltry Depo. 23:10–19.  Instead, Maltry relied upon photographs of the collision site, a South Carolina Traffic Collision Report Form, Google Maps and Google Earth maps of the collision site, specifications for the vehicles involved in the collision, and videos from the emergency responder dashboard cameras, among other evidence.  Maltry did explain that the only evidence he had about the speed of the vehicles was from Bryant's statement.  Maltry Depo. 33:14–34:2.  But Maltry also explained that because he did not have evidence of the exact speed, he relied mainly upon the acceleration ratio between Purvis's car and the truck, calculated based on the vehicles' specifications, and used "the worst possible circumstance" for defendants if he had to use a precise number for the speed.  Maltry Depo. 34:13–36:19.

Throughout his deposition, Maltry repeatedly stated that Purvis's account of the collision would not have affected his opinion because it contradicted his calculations. When Purvis's counsel told Maltry that Purvis testified that she stayed within her lane of traffic prior to the collision, Maltry explained that Purvis's account of the collision would

6

not materially change his opinion, and taking into account her version of the accident, he "could not make those numbers work out." Maltry Depo. 21:6–11, 48:23–49:8. Maltry also testified that Purvis's account was not mathematically possible based on the vehicles' acceleration capacity, the tire marks on the road, and his accident reconstruction. Maltry Depo. 56:19–58:9. In fact, the first scenario Maltry used to try to reconstruct the accident was with the truck entering into Purvis's lane, consistent with Purvis's testimony, and he stated that "he could not make those numbers work." Maltry Depo. 59:20–60:4.

Therefore, while Maltry may not have reviewed Purvis's deposition, he did consider Purvis's account of the car accident, and based on his reconstruction,[1] Maltry's opinion is that the accident could not have occurred in the manner Purvis described. As a result, he did consider an alternative version of the collision and rejected it as impossible based on his calculations. Whether Maltry should have actually reviewed Purvis's deposition testimony goes to the weight of the opinion, not its admissibility. See Glass v. Anne Arundel Cty., 38 F. Supp. 3d 705, 716 (D. Md. 2014), aff'd, 716 F. App'x 179 (4th Cir. 2018) ("[Plaintiff]'s objections to [the expert]'s conclusions from his calculations—and to [expert]'s failure to take other data into account—go to the weight of the report, not its admissibility, and may be challenged on cross-examination.").

### 2. Bryant's Driver Repair, Pre-Inspection and Post-Inspection Reports

Purvis also argues that Maltry should have considered Bryant's reports when forming his standard of care and causation opinions because they relate to both the

---

[1] Purvis does not appear to object to Maltry's accident reconstruction methodology.

7

standard of care and the cause of the accident. Bryant's reports contain notes that both before and after the accident, the steering wheel of the tractor trailer shook hard, the truck pulled to the right, and the driver's side mirror was not functioning.

### a. Standard of Care

Maltry's report does not opine on whether defendants breached a standard of care. At Maltry's deposition, he stated that the Federal Motor Carrier Safety Regulations establish the standard of care for truck drivers. Maltry Depo. 27:24–28:9. Purvis's counsel told Maltry that Bryant's reports indicate that Bryant's truck was pulling hard to the right and asked whether it would be a breach of the standard of care if the problem was known and not fixed. Maltry Depo. 42:3–25. After an objection from defendants' counsel, Maltry stated that it would be. Maltry Depo. 43:3. Purvis's counsel asked similar questions about the reports reflecting a shaking steering wheel and a malfunctioning mirror, and Maltry agreed that if the issues were known and not fixed, it could be a breach of standard of care. Maltry Depo. 46:3–48:7.

It is not clear to the court what opinion Purvis seeks to exclude on this basis. Maltry did not opine on whether defendants specifically breached a standard of care in either his report or his deposition. Purvis's counsel asked about Maltry's opinion about potential breaches of the standard of care related to Bryant's reports, but the questions were posed as hypotheticals, and Maltry agreed that the situations could be a breach of the standard of care without specifically opining on the case. The only time Maltry brought up the standard of care is in his deposition when he stated that the Federal Motor Carrier Safety Regulations establish the standard of care for truck drivers. However, this general comment about standard of care does not translate to any specific opinion about

the standard of care in this case that could be affected by Bryant's reports. As such, the court denies Purvis's motion to exclude Maltry with regard to his opinion on the standard of care. Purvis may still raise this objection at trial if Maltry begins to opine about legal conclusions.

### b. Causation

Purvis also argues that Maltry should have reviewed Bryant's reports when determining the cause of the accident. In his deposition, Maltry admitted that he did not consider Bryant's reports in forming his opinion and that the first time he learned of them was when he read Purvis's expert's report. Maltry Depo. 46:3–10. Maltry did not review the reports because they were not provided to him. Maltry Depo. 41:3–6. He also stated that "it can be" customary for an accident reconstructionist to rely on pre-trip and post-trip inspections reports to understand the condition of a vehicle involved in a collision, and "from time to time" it is necessary to review that information before forming an opinion. Maltry Depo. 40:17–41:2. Maltry also admitted that issues mentioned in the reports could make it more difficult to maintain control of the truck. Maltry Depo. 49:11–18.

However, like with Purvis's deposition testimony, Maltry relied on his calculations in his accident reconstruction to explain why reviewing the reports would be unnecessary in forming his opinion. After Purvis's counsel told Maltry that the reports describe the truck pulling hard to the right, Maltry stated that the information would not have affected his opinion on how the accident occurred and "wouldn't precipitate an accident of this sort." Maltry Depo. 42:3–16. Purvis's counsel asked Maltry if he could state with a reasonable degree of certainty whether the accident was caused by Bryant

drifting to the right, due to the problems with the truck, and then correcting back to the left and hitting Purvis's car. Maltry Depo. 51:2–7. Maltry answered that he "do[es] not believe that [Bryant] had the ability to do that, simply because the math doesn't work out that way." Maltry Depo. 51:8–10. As such, Maltry did "address obvious alternative causes and provide a reasonable explanation for dismissing specific alternate factors identified by the [opposing party]." In re Fosamax Prod. Liab. Litig., 647 F. Supp. 2d at 278 (quoting Israel v. Spring Indus., Inc., 2006 WL 3196956, at *5).

Purvis cites to Availl Servs., Inc. v. Cooper Indus., LLC, 572 F. Supp. 2d 676 (N.D. Tex. 2008), to support her argument that Maltry's failure to consider alternative causes warrants the exclusion of his opinion; however, the connection between that case and the instant case is tenuous, at best. Availl Servs. is a case about environmental cleanup under the Comprehensive Environmental Response, Compensation, and Liability Act, and the expert provided an opinion about the group of people who could be affected by the cleanup. Id. at 695–96. The court found that the expert's opinion failed to consider certain parties who could be affected by the cleanup, and as a result, his "unfounded speculation regarding the foreseeably affected parties . . . is an insufficient basis to withstand summary judgment." Id. at 696. The expert in Availl Servs. was not providing a causation opinion, and notably, the case contains no discussion or reference to Daubert or Fed. R. Evid. Rule 702. As such, the court finds this case unpersuasive.

Moreover, the other cases cited by Purvis on the topic of failure to consider alternative causes involve medical experts whose opinions were excluded based on additional issues, such as a lack of scientific basis for their opinions or simple disregard of contradictory evidence that could have affected the expert's opinion. See Claar v.

Burlington N.R. Co., 29 F.3d 499, 502 (9th Cir. 1994) (affirming district court's exclusion of expert testimony because experts did not rule out alternative causes of injuries, even though experts admitted this was standard practice, and did not offer a scientific basis for their ultimate causation opinion); Smelser v. Norfolk S. Ry. Co., 105 F.3d 299, 305 (6th Cir. 1997), abrogated on other grounds (finding expert's opinion that seatbelt failure caused the plaintiff's neck and back injuries to be unreliable because the expert did not consider the plaintiff's medical records, the plaintiff's deposition testimony, or uncontroverted evidence that the plaintiff had back injuries prior to the seatbelt failure). Here, unlike in Claar, Maltry offered a scientific basis for his opinion—his accident reconstruction—and Purvis does not appear to object to his methodology. Maltry testified that his accident reconstruction did not comport with Purvis's recollection of the accident, which made it unnecessary to review her deposition testimony. This was not a simple disregard of contradictory evidence. And unlike the expert in Smelser, here Maltry did consider the information in Purvis's testimony and Bryant's reports and still maintained that it was inconsistent with his calculations and opinion.

While Maltry did not dismiss the importance of Purvis's deposition testimony and Bryant's reports until after he came to his opinion, he made clear several times that this evidence would not have affected his opinion when he was forming it. While this post-hoc rationalization is certainly not something to be condoned, it is not sufficient to exclude Maltry's opinion. See Daubert, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

### 3. Limited Evidence from Counsel

Purvis also argues that it was improper for Maltry to receive limited evidence from defense counsel. She cites a series of cases in which courts found expert opinions to be unreliable because they were formed using information provided by counsel in the cases. See In re TMI Litig., 193 F.3d 613, 697–98 (3d Cir. 1999), amended, 199 F.3d 158 (3d Cir. 2000); Crowley v. Chait, 322 F. Supp. 2d 530, 545 (D.N.J. 2004); Robinson v. Sanctuary Record Groups, Ltd., 542 F. Supp. 2d 284, 290 (S.D.N.Y. 2008), vacated sub nom., 383 F. App'x 54 (2d Cir. 2010). However, in all of these cases, the experts relied solely on information created by counsel, whether it be summaries or calculations, and not their independent analysis and other available evidence. Here, Purvis does not allege that defendants' counsel created any of the evidence it provided to Maltry, and both Maltry's report and deposition make it clear that he conducted his own independent analysis with the evidence he was provided. Again, while the court does not condone a party failing to provide its expert with all of the evidence in a case, defendants' failure to provide Maltry with Purvis's deposition testimony and Bryant's reports is not egregious enough to exclude Maltry as an expert. As such, the court denies Purvis's motion to exclude defendants' expert.

### B. Motion to Compel or Exclude Purvis's Expert

Defendants argue that Purvis has not made her expert, Gerald C. McDevitt ("McDevitt"), available for deposition and asks the court to either compel Purvis to make McDevitt available to be deposed or to exclude his testimony and written opinion. Defendants explain that they asked to depose McDevitt on August 20, 2018 while at Maltry's deposition. Notably, the discovery deadline was August 21, 2018. Defendants'

counsel then emailed Purvis's counsel on August 27, 2018 requesting dates for the deposition, but Purvis's counsel did not respond. Defendants' counsel emailed again on September 13, 2018 asking to amend the scheduling order so that defendants could schedule the deposition, but Purvis's counsel denied the request. On September 19, 2018, defendants' counsel issued a subpoena to McDevitt.

Purvis responds that defendants ignored the scheduling order and are now attempting to engage in discovery after the discovery deadline has passed. Purvis explains that she identified her expert and provided defendants with McDevitt's report on June 21, 2018, and defendants waited until August 20, one day before the discovery deadline, to ask to schedule McDevitt's deposition. Purvis argues that permitting McDevitt's deposition would not comply with the scheduling order, which was amended three times, and defendants did not diligently pursue discovery as required to extend discovery under the Federal Rules of Civil Procedure or the Local Civil Rules. Purvis also asks the court to grant "proportional sanctions" and seems to suggest that the court should dismiss the case. ECF No. 33 at 12–14.

As an initial matter, defendants have not filed a motion to extend time to complete discovery or to amend the scheduling order, which would allow them to take McDevitt's deposition. However, even if defendants' motion to compel or exclude could be construed as a motion to extend time, they have not shown that they diligently pursued discovery during the original discovery period. According to Local Civil Rule 6.01, "[m]otions for extension of time for completion of discovery will be granted only in unusual cases and upon a showing that the parties have diligently pursued discovery during the originally specified period." Purvis identified her expert two months prior to

the close of discovery, yet defendants waited until the day before discovery ended to request a deposition. Defendants barely pursued this discovery at all, much less diligently. Defendants argue that they did request to take McDevitt's deposition before the discovery deadline, but the deposition itself needed to take place prior to the deadline, not just the request. Moreover, defendants' counsel could not have reasonably believed that a deposition could be scheduled and take place with 24 hours' notice.

Similarly, Rule 16 of the Federal Rules of Civil Procedure allow a modification to the scheduling order "upon a showing of good cause and by leave of the district judge." Yet defendants have not shown good cause as to why the scheduling order should be amended, which would allow them to take McDevitt's deposition.

Defendants argue that there would be no prejudice in allowing them to take McDevitt's deposition because there are no pending deadlines that would need to be changed in order to accommodate the deposition. That is true, but as Purvis mentioned, the scheduling order in this case had already been amended three times, and defendants have not given a good reason for why they waited until the day before discovery closed to request to depose McDevitt. As such, the court denies the motion, but the court declines to impose any sanctions on defendants.

## IV. CONCLUSION

For the reasons set forth above, the court **DENIES** Purvis's motion to exclude defendants' expert, **DENIES** defendants' motion to compel or exclude Purvis's expert, and finds moot defendant's motion to compel medical authorizations.

**AND IT IS SO ORDERED.**

DAVID C. NORTON
UNITED STATES DISTRICT JUDGE

**December 17, 2018**
**Charleston, South Carolina**